# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEFFERY HESTER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 18 C 1928 |
| | ) |
| JUSTIN HAMMERS, Warden, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

After a bench trial in the Circuit Court of Cook County, Jeffery Hester was convicted of one count of being an armed habitual criminal, two counts of unlawful use or possession of a firearm by a felon, and three counts of aggravated unlawful use of a weapon. The judge sentenced him to a prison term of eight years, to be followed by three years of mandatory supervised release. Hester has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.

## Background

Hester was charged with eleven counts relating to the possession and use of firearms, as well as narcotics possession, in connection with an incident that occurred on March 14, 2011. At trial, three Chicago police officers testified about that incident.

### A. Kerr's testimony

Officer Lawrence Kerr testified that shortly after 11 p.m., he and three other officers were on duty in an unmarked car near the intersection of 88th Street and Bishop

Street on Chicago's south side.  He saw a car make a turn without stopping at a stop sign, travel about one hundred feet further, and pull over to the side of the road.  The officers activated their vehicle's emergency equipment and pulled up behind the car, at which point all four officers approached the car.  Kerr saw that the car had one occupant whom later he identified as Hester.  As Kerr approached the driver's side door, Hester opened the door about two feet wide, and Kerr saw that there was a semiautomatic handgun on Hester's lap.  Kerr alerted the other officers that Hester had a gun, and Hester quickly closed the door and drove away.

The officers pursued him in their vehicle.  During the chase, Kerr heard one of the officers say "he just tossed it out the window," and the driver of the police vehicle slammed on the brakes.  Two officers exited the vehicle; Kerr later learned that they recovered a loaded handgun.  Meanwhile, Kerr and the driver of the police vehicle continued pursuing Hester.

Hester eventually pulled over near an apartment building, jumped out of the car, and ran toward the building while the officers followed on foot.  When he reached the building, he handed a woman a plastic bag containing a white substance.  As the officers apprehended him, the woman ran into an apartment and tossed the bag in a kitchen cabinet.  The officers recovered two bags containing white substances from the cabinet.

### B. Findysz's testimony

Officer Chris Findysz testified next.  He recounted the same general course of events as Kerr, although his testimony differed in some respects.  In particular, Findysz testified that while the officers were pursuing Hester after the traffic stop, Findysz saw

the driver of the car reach his arm out the window and throw a gun into the street, and the gun flew into the curb. He and another officer exited the car, and within thirty seconds they had recovered a handgun that was broken into two pieces, which he and his partner reassembled. Findysz also stated that when he saw Hester throw the gun out of the car, Hester's vehicle was moving at about twenty miles per hour.

Before resting its case, the prosecution introduced several exhibits into evidence, including documentation of Hester's previous convictions and the fact that he had not been issued a firearms owner's identification card by the state of Illinois. The parties also stipulated that lab tests had shown that one of the two bags recovered from the kitchen cabinet contained heroin and the other contained no unlawful narcotics.

Hester moved for a directed finding of not guilty on all counts. The court granted the motion in part, ruling that because Kerr was unable to identify which of the two bags Hester had possessed, it could not determine beyond a reasonable doubt that Hester had possessed narcotics. On that basis, the court acquitted Hester on the charge of narcotics possession and an associated charge of armed violence.

**C.    Bentley's testimony**

Hester called officer Joel Bentley to the stand. He testified to generally the same events that Kerr and Findysz described, although again there were differences in his account. Bentley testified that during the traffic stop he did not see a gun in Hester's lap or observe him opening the car door. He also stated that during the pursuit the vehicles were travelling between thirty and forty miles per hour and that he did not see Hester throw anything out the window.

### D.     Conviction and appeal

After hearing all the evidence, the court found that the officers had testified credibly and that any discrepancies in their statements were immaterial or could be reasonably explained.  Based on their testimony and the documentary evidence, the court found the defendant guilty on all six remaining counts.  Hester then filed a motion for a new trial, which the court denied.  At sentencing, the court merged the six counts into count one—the offense of being an armed habitual criminal in violation of 720 Ill. Comp. Stat. 5/24-1.7(a)—and sentenced Hester to eight years in prison and three years of mandatory supervised release.

Hester appealed his conviction to the Illinois Appellate Court.  First, he argued that the evidence was insufficient to prove his guilt beyond a reasonable doubt because the police officers' testimony was inconsistent and incredible.  Second, he contended that his convictions under 720 Ill. Comp. Stat. 5/24-1.6(a) should be vacated because the Illinois Supreme Court held that statute facially unconstitutional.

The Appellate Court rejected Hester's arguments.  After considering each of the alleged inconsistencies in the officers' testimony, it held that the trial court did not err in finding Hester guilty beyond a reasonable doubt.  *See People v. Hester*, No. 1-15-0890, 2017 IL App (1st) 150890-U, ¶¶ 16-27.  And it rejected Hester's arguments about the constitutionality of his convictions, reasoning that each of his convictions was based on his failure to obtain a firearm owner's identification card, which the Illinois Supreme Court has held constitutionally permissible.  *Id.* ¶¶ 28-29.

Hester filed a petition for leave to appeal his conviction to the Illinois Supreme Court, raising only the arguments concerning the sufficiency of the evidence.  The

4

Supreme Court denied the petition. *See People v. Hester*, No. 122390, 89 N.E.3d 759 (Ill. 2017) (table). He has timely filed a petition for a writ of habeas corpus.

## Discussion

Hester argues that he is entitled to habeas corpus relief because the Illinois Supreme Court held that the statutory provision that criminalizes aggravated unlawful use of a weapon is facially unconstitutional. He also argues that there was insufficient evidence to support his conviction.

To obtain a writ of habeas corpus, the petitioner must show not only that the state court applied federal law incorrectly but also that the court's decision was objectively unreasonable. *Saxon v. Lashbrook*, 873 F.3d 982, 987 (7th Cir. 2017). This standard is difficult to meet and highly deferential. *Id.*

**A.  Constitutionality of the weapons convictions**

In his petition, Hester focuses primarily on the constitutionality of his convictions under 720 Ill. Comp. Stat. 5/24-1.6, which prohibits "aggravated unlawful use of a weapon." Hester points out that after he was convicted, the Illinois Supreme Court held that sections 24-1.6(a)(1) and (a)(3)(A) are facially unconstitutional under the Second Amendment. *People v. Burns*, 2015 IL 117387 ¶ 32, 79 N.E.3d 159, 166 (2015).

The Court need not reach the merits of this argument because it is defaulted. "In general, habeas corpus petitioners may not raise [for the first time] any issue that they might have presented on direct appeal." *Cross v. United States*, 892 F.3d 288, 294 (7th Cir. 2018). Hester therefore may raise particular arguments only if he presented them in his petition for leave to appeal to the Illinois Supreme Court. *See Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45

(1999)). Because Hester's petition for leave to appeal discussed only the sufficiency of the evidence, *see* Pet. for Leave to Appeal, Gov.'s Ex. D, dkt. no. 11-2, his arguments concerning the constitutionality of his convictions under 720 Ill. Comp. Stat. 5/24-1.6 are defaulted. And because he has not shown cause for the default, meaning "an objective factor external to the defense that impeded the presentation of the claim to the state courts," *Crutchfield v. Dennison*, 910 F.3d 968, 973 (7th Cir. 2018), this Court cannot consider those arguments on their merits.

**B.    Sufficiency of the evidence**

Hester also argues that there was insufficient evidence presented at trial to prove his guilt beyond a reasonable doubt. Under the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), a criminal conviction satisfies due process if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. To prevail on his habeas corpus petition, Hester must meet a high bar because "the deference to state court decisions required by § 2254(d) is applied to the state court's already deferential review." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011).

Though Hester's habeas corpus petition refers to his challenge to the sufficiency of the evidence only in passing, his brief on direct appeal from his conviction identifies numerous alleged deficiencies in the evidence presented at trial. First, he focuses on Kerr's testimony that Hester opened his car door as the officers approached him during the traffic stop. Hester argues that because he had substantial past experience interacting with law enforcement, it is implausible that he would have opened his door to allow the police to view a handgun on his lap. He also points out that Findysz testified

6

that he did not see the gun and that Bentley testified that he had no recollection of a gun in Hester's lap or the car door opening.

The Illinois Appellate Court rejected these arguments. It deferred to the findings of the trial court, reasoning that "[a]ny inquiry into defendant's motive for not removing the gun from his lap and the officer's line of sight would be speculation on our part." *Hester*, 2017 IL App (1st) 150890-U, ¶ 25. This determination was not unreasonable given that "a reviewing court 'faced with a record of historical facts that support conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326). And the Appellate Court reasonably determined that because the testimony suggested that only Kerr was appropriately positioned to see the gun through the open car door, the fact that the other officers did not see or remember it was immaterial. *Hester*, 2017 IL App (1st) 150890-U, ¶ 20.

Second, Hester argues that there was insufficient evidence from which to conclude that the weapon that was recovered was the same one that Kerr testified he saw on Hester's lap. He cites discrepancies in the testimony regarding the speed of the cars to argue that Hester's car might have been moving up to forty miles per hour, and that therefore the area in which the gun could have landed was much larger than the area in which the officers searched. The Appellate Court reasonably rejected this argument, noting that Findysz testified that he saw the gun hit the ground and quickly recovered it from that location. As the court explained, given Findysz's testimony, "the surface area where the weapon *could* have landed is irrelevant." *Id.* ¶ 22.

7

Hester also points out that the officers testified that the gun they recovered was broken into two pieces, unlike the intact gun Kerr testified he saw on Hester's lap. He also notes that the gun was not subjected to fingerprint analysis and that it was recovered in a high-crime area where, he suggests, it is possible that a different gun might have been lying in the street. The Appellate Court found that the trial court reasonably credited Kerr's testimony about seeing the gun on Hester's lap, as well as Findysz's testimony that he saw Hester throw the gun into the street, and it drew a reasonable inference that the gun broke apart upon hitting the curb. The court's conclusion was not unreasonable.

Finally, Hester points to a range of relatively minor discrepancies in the details of the pursuit. For example, he points out that one officer stated that he saw Hester throw the gun and others did not, and the officers used different language to express how Findysz notified them that he saw Hester throw the gun out of the car. It was reasonable for the Appellate Court to defer to the trial court's credibility determinations on these issues, which involved fairly minor differences in the officers' testimony. Under the highly deferential standard that applies to this Court's review of the Illinois Appellate Court's decision, Hester's arguments concerning the sufficiency of the evidence do not warrant habeas corpus relief.

## Conclusion

For the foregoing reasons, the Court denies Hester's petition for a writ of habeas corpus. The Court declines to issue a certificate of appealability because it concludes that Hester has not made a "substantial showing of the denial of a constitutional

right." 28 U.S.C. § 2253(c)(2).

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 26, 2019